## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DONALD JOSEPH WEST,**

        **Plaintiff,**

        **v.**                       **CASE NO.  24-3051-JWL**

**(FNU) (LNU), Director,**
**Federal Bureau of Prisons, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

The Court has screened Plaintiff's Amended Complaint and finds it deficient in several respects. Plaintiff is given an opportunity to file a second amended complaint to cure the deficiencies.  The Court also finds that a limited *Martinez* Report is warranted in light of Plaintiff's allegations regarding the availability of administrative remedies at FCIL.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate FCIL officials to prepare and file a limited *Martinez* Report.

### I.  Nature of the Matter before the Court

Plaintiff, a federal prisoner incarcerated at the Federal Correctional Institution–Leavenworth ("FCIL"), formerly known as the United States Penitentiary in Leavenworth, Kansas ("USPL"), filed this pro se civil action regarding his conditions of confinement at FCIL.

Plaintiff alleges in his Complaint that prisoners at FCIL are being treated inhumanely. (Doc. 5, at 2.)  For support, Plaintiff states "see enclosed Amended petition." *Id.*   Plaintiff submitted the Amended Complaint (Doc. 6), which purports to be a class action and seeks immediate injunctive relief.  (Doc. 6, at 1.)

1

The Amended Complaint sets forth various claims regarding the conditions at FCIL, arguing that money allotted by Congress is not being used properly and staff are lazy and refuse to do their jobs. *Id*. at 2–3. Plaintiff then argues that FCIL has been locked down for the past two months without a good reason. *Id*. at 3–4; *see also id*. at 40 (referring to the "over 45 day lockdown" for a "fictitious firearm scare"). Plaintiff seeks an investigation into the conditions at this facility "and throughout the federal prison system." *Id*. at 4. Plaintiff alleges mismanagement at the facility, including: the mishandling of inmates' property; understaffing; "poor" food; the denial of court access; and the denial of out-of-cell recreation/sun light/fresh air. *Id*. at 5, 44–47.

Plaintiff alleges that during the recent 45-day lockdown in March and April, staff and laundry services were unavailable, causing inmates to go without clean bedding or clothing for over 45 days; showers were denied for nine to eleven days during the 45-day lockdown; hygiene and writing/mailing supplies were unavailable; and the water was shut off for three days for a search and inmates "were made to urinate/defecate in a nasty toilet without water or in plastic bags." *Id*. at 5–6, 8. Although the 45-day lockdown ended, Plaintiff claims that they were once again placed on lockdown and are "continually being locked down." *Id*. at 53–54.

Plaintiff alleges that he has been waiting six months to have a chipped tooth repaired and was told that the dentist called in sick, and he had to wait eight months to see a doctor. *Id*. at 7. Plaintiff alleges that the facility contains black mold and rodents. *Id*. at 8, 18–23. Plaintiff also alleges that he is being harassed and retaliated against for filing complaints. *Id*. at 10–11.

Plaintiff names as defendants: (fnu) (lnu) Director, Federal Bureau of Prisons; (fnu) Carter, USPL Warden; and (fnu) (lnu) USPL Staff Members. For relief, Plaintiff seeks "[i]njunctive relief described in petition and monetary damages for violations." (Doc. 5, at 5.)

In the attached Amended Complaint, Plaintiff seeks injunctive relief in the form of an order for "the Director of the Federal Bureau of Prisons and Warden Carter to stop the continued lockdowns, allow the orderly running of the prison which has not properly functioned for the past 10 months, and allow all the issues numbered one through fourteen be granted and ordered to be followed per federal law, federal guidelines, B.O.P. policy and Constitutional Law." (Doc. 6, at 55.)

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

3

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

4

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

The Court has conducted the required screening and concludes that Plaintiff's Amended Complaint is deficient in several respects. Because Plaintiff's original complaint was not on a court-approved form, the Court directed Plaintiff to resubmit his complaint on the proper form. (Doc. 2, at 1.) Although Plaintiff submitted his Complaint on the court-approved form for filing an action under 28 U.S.C. § 1331 (Doc. 5), he merely uses it to reference his 55-page Amended Complaint (Doc. 6) which was submitted as a separate document and states that it is being filed pursuant to 42 U.S.C. § 1983. *See* Doc. 6, at 17.

Although Plaintiff used the required, court-approved form, he has not complied with the directions on the form. For example, the second page of the form provides space for a plaintiff to "[b]riefly state the background of [his or her] case." (*See* Doc. 5, p. 2.) The third page of the form provides spaces for a plaintiff to set forth Counts I and II of their "Cause of Action." *Id.* at 3. For each count, there is a designated space to identify the "constitutional provisions or laws of the United States" the plaintiff believes were violated and a separate designated space to set out the facts that support the claimed violation. *Id.* In the subsection labeled "[s]upporting facts," plaintiffs are directed to "[i]nclude all facts you consider important, including names of persons involved, places and dates. Describe exactly how each defendant is involved. State the facts clearly in your own words without citing legal authority or argument." *Id.* The form also provides on this page that if necessary, a plaintiff may attach "two additional pages (8 1/2" x 11") to explain any allegation or to list additional supporting facts." *Id.*

Despite these instructions, Plaintiff merely states "see petition amended enclosed (14 counts." *Id*. The Court will give Plaintiff an opportunity to submit a second amended complaint on the court-approved form. In submitting his second amended complaint, Plaintiff should follow the instructions on the form and should cure the deficiencies set forth in this Memorandum and Order.

Plaintiff has also filed multiple motions to supplement his Amended Complaint and a motion for leave to file an amended complaint. *See* Docs. 12, 13, 14, and 16. Because the Court is giving Plaintiff an opportunity to file a second amended complaint, the Court denies the motions to supplement and motion for leave to file an amended complaint. Plaintiff should include all of his claims in any second amended complaint that he files.

## 1. Rule 8

In filing a second amended complaint, Plaintiff must comply with Fed. R. Civ. P. 8's pleading standards. Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff's Amended Complaint fails to comply with this rule.

"It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis. Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)). "A complaint has two purposes: to provide the opposing parties fair notice of the claims against them and to allow a court to determine whether a plaintiff is entitled to relief."

*Newton v. City of Atchison, Kansas*, 2024 WL 2272565, at *4 (D. Kan. May 20, 2024) (citing *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1989)). "These purposes are thwarted when a complaint is unnecessarily long and includes a 'a morass of irrelevancies.'" *Id.* (citing *Baker v. City of Loveland*, 686 F. App'x 619, 620 (10th Cir. 2017)).

When a plaintiff fails to comply with Rule 8, this Court is authorized to dismiss the complaint. *See Nasious* v. *Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1162 n.3 (10th Cir. 2007); *Chavez v. Huerfano Cty.*, 195 F. App'x 728, 730 (10th Cir. 2006) (unpublished) (affirming dismissal without prejudice for violation of Rule 8 and stating that "[i]t is not the role of the court to sort through a lengthy complaint to construct the plaintiff's case"). Rather than immediately imposing such a harsh consequence, however, the Court will allow Plaintiff an opportunity to amend his complaint to clearly set forth his claims in this matter.

### 2. Rules 18 and 20

Plaintiff has set forth unrelated claims in his Amended Complaint, including claims regarding his dental care, medical care, food, property, cell conditions, and lockdowns. Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint. Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***. Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). While joinder is encouraged for purposes of judicial economy, the "Federal Rules

do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the

8

transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### 3.  42 U.S.C. § 1983

Plaintiff asserts that he is filing his Amended Complaint pursuant to 42 U.S.C. § 1983. (Doc. 6, at 17.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  A defendant acts "under color of state law" when he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Id*. at 49 (citations omitted).  Plaintiff names the Director of the BOP and staff at USPL as defendants, and provides no factual claim or support for a claim that any defendant acted under color of state law.  Plaintiff does not have a cause of action under 42 U.S.C. § 1983.

### 4.  Claims Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

Plaintiff seeks monetary damages (Doc. 5, at 5), but has not shown that a *Bivens* remedy is available for his claims.  The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless."  *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024). The Tenth Circuit in *Logsdon* found that:

Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id.* at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id*. at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id*.

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program "ARP" was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs' ") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *2 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two."). In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.' " *Id*. (citation omitted). "[B]ecause *Bivens*

'is concerned solely with deterring the unconstitutional acts of individual officers,' " we find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim.  *Id.* (quoting *Egbert*, 142 S. Ct. at 1806 (quoting *Malesko*, 534 U.S. at 71, 122 S. Ct. 515)).    Based on the reasoning set forth in the recent Tenth Circuit opinions cited above, the Court finds that Plaintiff fails to state a claim for relief under *Bivens*.

### 5.  Injunctive Relief

Plaintiff also seeks injunctive relief.  "If equitable relief rather than damages is sought from a federal official, it must be obtained against him in his official capacity through a claim in the nature of injunction or mandamus."  *Arocho v. Nafziger*, 367 F. App'x 942, 948 n.5 (10th Cir. 2010) (unpublished) (citing *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005)).

The Tenth Circuit has held that the Court's "traditional powers of equity . . . to prevent violations of constitutional rights . . . flow from the long-recognized 'jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution.'"  *Maehr v. U.S. Dep't of State*, 5 F.4th 1100, 1106 (10th Cir. 2021) (quoting *Simmat*, 413 F.3d at 1231, and *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  "*Bell v. Hood* held that suits for relief directly under the Constitution fall within [the] grant of jurisdiction" provided by § 1331.  *Id.* (citing *Simmat*, 413 F.3d at 1232).  "Section 1331 thus provides jurisdiction for the exercise of the traditional powers of equity in actions arising under federal law."  *Id.* (quoting *Simmat*, 413 F.3d at 1232).

The Court's jurisdiction is not barred by sovereign immunity.  *Id.*  "Section 702 of the APA waives sovereign immunity for actions 'stating a claim that an agency . . . acted or failed to act . . . under color of legal authority.'"  *Id.* "This waiver is not limited to suits under the

Administrative Procedure Act." *Id*. at 1106–07 (citing *Simmat*, 413 F.3d at 1233); *see also Rivera v. IRS*, 708 F. App'x 508, 511 n.2 (10th Cir. 2017) (unpublished) ("The waiver of sovereign immunity provided in APA § 702 encompasses both claims of nonmonetary relief asserted under the APA and claims asserted against federal agencies under other, non-APA authority.") (citations omitted).   The Prison Litigation Reform Act ("PLRA") contains new standards for awarding prospective relief, *see* 18 U.S.C. § 3626(a), and provides a mechanism for defendants to seek termination of prospective relief, *see* 18 U.S.C. § 3626(b).

Even in cases where a court has jurisdiction over claims for nonmonetary relief, the PLRA requires exhaustion of administrative remedies prior to bringing an action regarding prison conditions.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (finding that "exhaustion of available remedies is required for any suit challenging prison conditions, not just for suits under § 1983") (citation omitted); *see also Gonzalez v. Ortiz*, 2021 WL 308548, at *2 (D. N.J. 2021) (noting that petitioner could bring a civil rights complaint for injunctive relief under § 1331, "but he must first exhaust administrative remedies under the . . . PLRA").

An inmate is required by the PLRA to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit regarding prison conditions in federal court") (citations omitted).

"Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address

complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).

The PLRA provides that an inmate must exhaust only *available* administrative remedies. 42 U.S.C. § 1997e(a) (emphasis added). An administrative remedy is unavailable "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation," *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011), or "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy," *Little*, 607 F.3d at 1250. Indeed, "courts [ ] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (citing *see, e.g., Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002) (stating that although 42 U.S.C. § 1997e requires inmates to exhaust "available" administrative remedies, the "failure [of prison officials] to respond to a grievance

within the time limits contained in the grievance policy renders an administrative remedy unavailable")).

Plaintiff argues that FCIL staff fail to answer inmates' grievances and "there is no administrative remedy procedure."  (Doc. 6, at 23.)  He claims that "[s]taff do not supply administrative remedy papers, pens, pencils to file grievances [and] do not answer any written requests, electronic emails or letters and calls from our families."  *Id*. at 38.

Plaintiff's allegations regarding the conditions of confinement at FCIL are very troubling and concerning.  Because the Court is also concerned with Plaintiff's allegations regarding the availability of the BOP's ARP at FCIL, the Court is directing FCIL officials to prepare a *Martinez* Report on this limited issue. [1]

## IV.  Motions

### 1.  Motion for Leave to Proceed in Forma Pauperis (Doc. 7)

The Court previously advised Plaintiff that his motion for leave to proceed in forma pauperis was deficient in that it did not include the required financial information.  *See* Doc. 9, at 2 (citing 28 U.S.C § 1915(a)(2) (A prisoner seeking to bring a civil action without prepayment of fees shall submit a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint.)).  The Court granted Plaintiff until June 7, 2024, in which to submit his account statement for the appropriate six-month period.  *Id*.  To date, Plaintiff has failed to submit the required financial information.

---

[1] In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies.  *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).  "Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'"  *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).

The Court will provisionally grant Plaintiff leave to proceed in forma pauperis.  Plaintiff is granted until August 19, 2024, in which to submit the financial information to support his motion.

### 2. Motions to Supplement  (Docs. 12, 14 and 16)

Plaintiff has filed a motion titled "Motion of Evidence/Photographs of the Black Mold and Hazardous Living Conditions in B-Upper Unit at Leavenworth, Kansas Federal Facility." (Doc. 12, at 1.)  Plaintiff then asks the Court for injunctive relief in the form of an immediate order closing B-Upper Unit.  *Id.* at 2.  In light of Plaintiff's "Motion of Information" at Doc. 16 (see below), it appears that the request for injunctive relief is now moot.

It appears that Plaintiff is seeking discovery of pictures of the black mold and mice droppings that were allegedly taken by the warden and staff, as well as the regional directors and directors from Washington, D.C.  *Id.* at 2.  Plaintiff also states that numerous photographs will be sent to the Court from Plaintiff's family.  *Id.* at 3.  The Court has not received any photographs regarding this case.  The Court has ordered a limited *Martinez* Report and discovery is premature at this stage of the proceedings.  The motion is denied.

Plaintiff has also filed a motion seeking to add additional exhibits to his Amended Complaint. (Doc. 14.) The attached exhibits relate to Plaintiff's requests for funds to be issued from his trust fund account for child support and to purchase a law journal, Plaintiff's lost property, and Plaintiff's failure to receive medical supplies.  *See* Doc. 14–1.  Because Plaintiff is given the opportunity to file a second amended complaint, his request to supplement the current complaint is denied.  As set forth above, Plaintiff should comply with Fed. R. Civ. P. 18 and 20 when submitting his second amended complaint.

Plaintiff also filed a "Motion of Information Concerning Black Mold and Movement of Inmates from B-Upper Unit From the Top Tier, Cells 533 through 567, Approximately 68 Inmates from Back Half of Top Tier" (Doc. 16).  Plaintiff alleges that prison officials finally recognized the harmful conditions and have moved inmates from the most affected areas of the B-Upper Unit to new units and to the front of the unit.  *Id*. at 1.  Because the motion only provides information to the Court and does not seek any relief, the "motion" is denied.

### 3.  Motion for Leave to Amend Complaint (Doc. 13)

Plaintiff has filed a motion seeking to add inmates to this case.  The motion sets forth eight inmates' names and signatures.  (Doc. 13, at 3.)  Because the Court is granting Plaintiff an opportunity to file a second amended complaint, the current motion for leave to amend is denied.

### 4.  Motion for Preliminary Injunction (Doc. 15)

Plaintiff has filed a motion for injunctive relief, seeking an order directing prison officials to stop the harassment and retaliation against Plaintiff, and ordering them to unfreeze Plaintiff's trust fund account to allow him to pay the filing fee in this case and to purchase commissary items.  (Doc. 15, at 1.)  Plaintiff also seeks to restore family communications via e-mails.  *Id*.  Plaintiff then makes arguments regarding his July 2023 transfer to USPL, claiming that although he was supposed to be transferred closer to home, he was actually transferred further away from home.  *Id*. at 2.  He also argues that in retaliation for filing grievances regarding his medical care, his Financial Responsibility Plan ("FRP") was revised to raise it from $50 per quarter to $200 per month.  *Id*. at 3.  Plaintiff also re-alleges claims from his Amended Complaint, including arguing that he is not receiving proper medical care and arguments regarding conditions during the 45-day lockdown.  *Id*. at 3–5.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

Plaintiff alleges that his prison account has been frozen, including monies sent to Plaintiff by his family. *See* Doc. 15, at 6–7. To the extent Plaintiff is concerned that he is unable to access his account to pay the filing fee in this case, the Court notes that the Court is provisionally

granting Plaintiff leave to proceed in forma pauperis.  Plaintiff claims in the motion that he has filed a letter "as well as a BP-8 and 9 which are to Unit Team and Warden Carter" and that he also gave a copy to the Associate Warden to give to Warden Carter.  *Id.* at 8.  Plaintiff states that he has not received a response.  *Id.*

Plaintiff filed this case on April 11, 2024, and his attached grievance is dated June 4, 2024. Therefore, he did not exhaust his administrative grievances on the issues regarding his prison account prior to filing this action.  Although Plaintiff had not received a response by the time he filed his motion—eight days after he filed the grievance—it is unclear what the current status is regarding his grievance and whether or not he received a response or relief.  As set forth above, the Court is concerned regarding whether or not the BOP's ARP is available at FCIL and is ordering a limited *Martinez* Report on the issue.

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.  However, the Court denies the request for injunctive relief without prejudice to refiling the motion after the *Martinez* Report has been filed and the Court has screened any second amended complaint filed by Plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is provisionally granted leave to proceed in forma pauperis.  Plaintiff is granted until **August 19, 2024**, in which to submit the financial information to support his motion.

**IT IS FURTHER ORDERED** that Plaintiff's motions (Docs. 12, 13, 14 and 16) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 15) is **denied without prejudice.**

19

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 19, 2024,** in which to submit a second amended complaint that cures the deficiencies set forth in this Memorandum and Order.  The Clerk is directed to send 28 U.S.C. § 1331 forms and instructions to Plaintiff.

**IT IS FURTHER ORDERED** that:

1.  FCIL officials shall submit the limited *Martinez* Report by **August 19, 2024.**

2.  FCIL officials are directed to undertake a review of the allegations in the Amended Complaint that the ARP is unavailable at FCIL:

> a.  To ascertain the facts and circumstances;
>
> b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and
>
> c.  To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

3.  Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the FCIL officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The FCIL officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

4.  Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

5.   Authorization is granted to the FCIL officials to interview all witnesses having knowledge of the facts, including Plaintiff.

6.   No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared and filed.

7.   Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to Plaintiff's complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the FCIL Warden as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.

Copies of this order shall be transmitted to Plaintiff, to the FCIL Warden, and to the United States Attorney for the District of Kansas.

**IT IS SO ORDERED**.

**Dated July 18, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**