IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD JOSEPH WEST,

    **Plaintiff,**

v.                                         CASE NO. 24-3051-JWL

(FNU) (LNU), Director,
Federal Bureau of Prisons, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a federal prisoner incarcerated at the Federal Correctional Institution–Leavenworth ("FCIL"), filed this pro se civil action regarding his conditions of confinement at FCIL. On July 18, 2024, the Court entered a Memorandum and Order (Doc. 17) granting Plaintiff an opportunity to file a second amended complaint to cure the deficiencies set forth in the Memorandum and Order, and ordering FCIL officials to submit a limited *Martinez* Report regarding the availability of administrative remedies at FCIL.

This matter is before the Court on Plaintiff's motion for reconsideration (Doc. 30). Plaintiff seeks reconsideration of this Court's July 22, 2024 Memorandum and Order (Doc. 22) ("M&O"). The M&O denied without prejudice Plaintiff's Motion for Appointment of Counsel (Doc. 18) and motion (Doc. 20) seeking injunctive relief. The M&O also denied Plaintiff's Motion for Leave to Amend Complaint (Docs. 19 and 21).

In the M&O, the Court denied Plaintiff's motion for appointment of counsel without prejudice to refiling the motion if Plaintiff's claims survive screening. The Court also denied Plaintiff's motion for leave to amend his complaint because the Court had already granted Plaintiff an opportunity to file a second amended complaint.

1

The Court also denied Plaintiff's motions (Docs. 20, 21) seeking injunctive relief. The Court noted that Plaintiff filed a second "Motion of Information." In his first "Motion of Information" Plaintiff stated that prison officials finally recognized the harmful conditions and moved inmates from the most affected areas of the B-Upper Unit to new units and to the front of the unit. (Doc. 16, at 1.) Because the first motion only provided information to the Court and did not seek any relief, the motion was denied.

Plaintiff's second motion informed the Court that the prison has now cleared out two additional tiers of the back half of B-Upper Unit, levels three and four, moving approximately 136 inmates, and Warden Carter "has now closed the entire back half of the unit due to black mold and the unsafe and hazardous living conditions." (Doc. 20, at 1.) Plaintiff states that the inmates in the front half of the unit are still in danger because "there is no way to seal off the ceilings and walkway areas and giant fans blow in the back half circulating the air and black mold spores." *Id*. Plaintiff then requests that all inmates continue to be moved from the B-Upper Unit and for the Unit to be closed. *Id*. at 2.

The Court held in the M&O that to the extent Plaintiff is seeking injunctive relief, the request is denied. The Court held that the provided information suggests that FCIL officials are attempting to address the concerns regarding the conditions in B-Upper Unit, and have continued their efforts since Plaintiff filed his first motion. The Court found that Plaintiff failed to meet his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. However, the Court denied the request for injunctive relief without prejudice to refiling a motion after the *Martinez* Report has been filed and the Court has screened any second amended complaint filed by Plaintiff.

Plaintiff filed a Second Motion Requesting Injunctive Relief (Doc. 21),[1] seeking injunctive relief regarding the freeze on his inmate account. Plaintiff asked the Court to order the BOP to stop all types of harassment and retaliation and to order "the prison to immediately un-freeze and to restore his prison trust fund account and money taken from his Tru-Linc Account for e-mail and family communications . . . [and his] Tru-Linc Phone Account to be restored for family communications." (Doc. 21, at 1–2.) Plaintiff also sought an order requiring the prison to restore his Financial Responsibility Plan back to $50 per quarter. *Id*. at 2. Plaintiff noted that he had not yet received a response to his grievance on the issue. *Id*. at 3.

The Court's M&O references the Court's denial of Plaintiff's first motion for injunctive relief, stating that:

> In denying Plaintiff's first motion for injunctive relief, the Court found that:
>
>> To the extent Plaintiff is concerned that he is unable to access his account to pay the filing fee in this case, the Court notes that the Court is provisionally granting Plaintiff leave to proceed in forma pauperis. Plaintiff claims in the motion that he has filed a letter "as well as a BP-8 and 9 which are to Unit Team and Warden Carter" and that he also gave a copy to the Associate Warden to give to Warden Carter. *Id*. at 8. Plaintiff states that he has not received a response. *Id*.
>>   Plaintiff filed this case on April 11, 2024, and his attached grievance is dated June 4, 2024. Therefore, he did not exhaust his administrative grievances on the issues regarding his prison account prior to filing this action. Although Plaintiff had not received a response by the time he filed his motion—eight days after he filed the grievance—it is unclear what the current status is regarding his grievance and whether or not he received a response or relief. As set forth above, the Court is concerned regarding whether or not the BOP's ARP is available at FCIL and is ordering a limited *Martinez* Report on the issue.

---

[1] Plaintiff indicated that he was filing the motion in this Court and in the Tenth Circuit Court of Appeals. He stated that this is his second request in this Court and his first request to the Tenth Circuit Court of Appeals. (Doc. 21, at 1.) Because Plaintiff did not indicate that he was seeking reconsideration of this Court's denial of his first motion, or an interlocutory appeal, the Court did not treat his second motion as a motion to reconsider or as a notice of interlocutory appeal.

> The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. However, the Court denies the request for injunctive relief without prejudice to refiling the motion after the *Martinez* Report has been filed and the Court has screened any second amended complaint filed by Plaintiff.

M&O, Doc. 22, at 5–6 (quoting Doc. 17, at 18–19.)

The Court then denied the current motion for the same reasoning set forth in the Court's prior Memorandum and Order at Doc. 17. The Court also noted in the M&O that deprivations of property do not deny due process as long as there is an adequate post-deprivation remedy. A due process claim will arise only if there is no such procedure or it is inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."). Kansas prisoners have an adequate state post-deprivation remedy. *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property).

In his motion for reconsideration of the Court's M&O, Plaintiff asks the Court to reconsider its denial of appointment of counsel and its denial of injunctive relief seeking to "stop the prolonged retaliation and harassment by staff focused at [Plaintiff]." (Doc. 30, at 2.) Plaintiff's motion then reiterates his claims in his Amended Complaint. *Id*. at 2–4, 7–13.

Plaintiff argues that Dr. Clark's son was assigned as Plaintiff's new case manager and his son retaliated against Plaintiff by placing Plaintiff on FRP refusal status. *Id*. at 4. Plaintiff alleges that his refusal status was based on Plaintiff's refusal to change the amount of his FRP

4

payments from $50.00 per quarter to $250.00 per month. *Id*. Plaintiff alleges that this was done because Plaintiff had $300.00 on his account, and because Plaintiff had filed grievances against Dr. Clark—his father. *Id*. Plaintiff argues that BOP policy prevents family members from working together to prevent this type of harassment and retaliation. *Id*. at 5.

Plaintiff then argues that he turned in three BP-199s to send money from his trust fund account for child support, to purchase a Georgetown Law Journal, and to send a payment to his pastor. *Id*. at 6. He argues that staff refused to process the BP-199s, then the funds were put on hold and eventually the purchases were reversed. *Id*. In the motion for reconsideration, Plaintiff asks the Court to restore Plaintiff's trust fund account to normal FRP status, to order all monies to be returned to his email and phone accounts, and to unfreeze/unencumber Plaintiff's funds so he may use the BP-199 process, print emails on the law library computer system, and use his email services for family communications. *Id*. at 18.

The Court denies Plaintiff's request to reconsider the denial of injunctive relief in the Court's M&O. Plaintiff has failed to present any of the grounds warranting reconsideration as set forth in Local Rule 7.3. *See* D. Kan. Rule 7.3. Plaintiff has not set forth an intervening change in controlling law or the availability of new evidence. Plaintiff has not set forth the need to correct clear error or to prevent manifest injustice. In fact, since Plaintiff filed his motion for reconsideration, the Court has received the Court-ordered *Martinez* Report (Doc. 35) (the "Report") and Plaintiff's Second Amended Complaint (Doc. 41) ("SAC").

The Report states that Plaintiff was interviewed during the preparation of the Report, and in response to his concerns over retaliation, was "informed . . . that these two individuals are not related." (Doc. 35–1, at 11.) The Report further states that:

5

Regarding a resolution, Plaintiff indicated that he primar[ily] wants to have the issues related to his BP-199 and frozen account resolved.

\* \* \* \*

In an affidavit dated August 16, 2024, Senior Officer Specialist Vincent Cruz, explained his role with regard to the investigation of inmate West's Administrative Remedy, the informal resolution of the matter and withdrawal on July 22, 2024. A copy of his affidavit is attached as Exhibit 10.

In his affidavit, Officer Cruz explained that he is presently assigned to assist the Special Investigative Services (SIS) in investigating matters referred to the department. Exhibit 10, at ¶5. This includes the investigating of possible illicit transfer of money by inmates. *Id.*

Officer Cruz indicated that on July 12, 2024, he received a BP-9 regarding inmate West, and that it concerned an allegation that his BP-199 forms [sic] not being processed. *Id.* at ¶6. Officer Cruz explained that a BP-199 form is a Request for Withdrawal of Inmate Personal Funds and inmates utilize this form to send money to other individuals *Id.* Officer Cruz indicated that inmate West's request was initially denied because of a concern that the funds were potentially being used for illicit activity. *Id.* at ¶7. This was suspected because the intended recipients of these funds were contacts of other BOP inmates. *Id.*

Officer Cruz indicated that upon receiving the BP-9 regarding this matter, he investigated the allegations and determined that while the requested transfer was to individuals who had contacts with other BOP inmates, the transfer was not likely illicit. *Id.* at ¶8.

Officer Cruz explained that on July 22, 2024, he met with inmate West to discuss the informal resolution of his BP-9 and informed him that his BP-199 for this matter would not be denied for this reason if he resubmitted it. *Id.* at ¶9. Officer Cruz stated that inmate West also informed him of concerns not provided on his BP-9 related to his Financial Responsibility Plan (FRP) Refusal and an encumbrance on his account. *Id.* Officer Cruz instructed inmate West that he would need to raise the FRP issue to his Unit Team, as that was not an issue his department could assist with. *Id.* Officer Cruz indicated that at the conclusion of the meeting inmate West signed a Withdrawal of Administrative Remedy form as the matter relating to his BP-199 had been informally resolved. *Id.*

Officer Cruz further indicated that as [sic] the writing of the affidavit, inmate West would not be prohibited from sending a new BP-199 form and that the issue relating to his BP-199 being denied was resolved in his favor. *Id.* at ¶10. Officer Cruz indicated that it

6

>was his understanding that there might be another issue relating to his FRP and encumbrance that may be impacting the amount of money he has access to; and that he informed inmate West he needed to speak with his Unit Team regarding this matter as it was not something his department could resolve. *Id.*
>
>\* \* \* \*
>
>Plaintiff's BP-9 regarding the denial of his BP-199 forms was informally resolved in his favor and withdrawn. Exhibit 13, West Administrative Remedy and Exhibit 10.

(Doc. 35–1, at 18–19, 23.)

Plaintiff does not seek any relief in his SAC regarding his frozen account, the BP-199s, or his FRP.[2] *See* Doc. 41. The only injunctive relief Plaintiff seeks in his SAC is "release from prison and the prosecution of Director, Warden, and Captain Hart." *Id*. at 10.

Plaintiff also claims that the Court should have appointed counsel, arguing that the inmates are unable to confer with each other and to access the law library. (Doc. 30, at 16–17.) Plaintiff states that "[i]n the alternate of appointment of counsel, we will request an additional sixty (60) day extension of time to prepare the new amended complaint . . .." *Id*. at 17. Plaintiff has now filed his SAC and he is the only inmate that signed it. The Court finds that the denial of appointment of counsel without prejudice was warranted. The Court denied the motion "without prejudice to refiling the motion if Plaintiff's claims survive screening." (Doc. 22, at 3.)

---

[2] *See also Neal v. Starr*, 2023 WL 11930898, at *2 (D. Colo. 2023), *adopted* 2023 WL 11930905 (D. Colo. 2023) (construing Neal's challenge to his payment schedule and placement in FRP refusal status as a petition under 28 U.S.C. § 2241 attacking the execution of his sentence) (citing *See, e.g.*, *Dade v. Sanders*, 510 F. App'x 714, 717 n.5 (10th Cir. 2013) (citing *Matheny v. Morrison*, 307 F.3d 709, 711–12 (8th Cir. 2002) (explaining that claims "challeng[ing] the IFRP's payment schedule . . . concern the execution of sentence, and are therefore correctly framed as § 2241 claims")); *Wallette v. Wilner*, 321 F. App'x 735, 738 (10th Cir. 2009) ("Because a challenge to the BOP's authority to set restitution payment terms goes to the execution of [petitioner's] sentence, this claim falls within those properly raised in a petition for habeas corpus under § 2241."); *Davis v. Wiley*, 260 F. App'x 66, 68 & n.2 (10th Cir. 2008) (explaining that a claim challenging "the BOP's authority under the IFRP to establish and enforce payment amounts [the petitioner] must follow in connection with the court-ordered special assessment and restitution" was "properly raised in a § 2241 petition" because it "attack[ed] the execution of [the petitioner's] sentence")).

Plaintiff's claims have not yet survived screening.  The Court is currently screening Plaintiff's SAC and reviewing the Report.  Plaintiff will be given an opportunity to respond to the Report.

Plaintiff has failed to show that reconsideration of the Court's M&O is warranted.  Plaintiff has not set forth an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or to prevent manifest injustice.  Plaintiff's motion for reconsideration is denied.

Plaintiff has also filed Motions for Extensions of Time (Docs. 37, 40), seeking an extension of time to submit his second amended complaint.  On September 11, 2024, Plaintiff filed his Second Amended Complaint (Doc. 41).  Therefore, Plaintiff's requests for an extension of time are denied as moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motions for Extensions of Time (Docs. 37, 40) are **denied as moot.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration (Doc. 30) is **denied.**

**IT IS SO ORDERED**.

**Dated October 2, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**