## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DONALD JOSEPH WEST,**

      **Plaintiff,**

      **v.**　　　　　　　　　　　　　　　**CASE NO.  24-3051-JWL**

**(FNU) (LNU), Director,**
**Federal Bureau of Prisons, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a federal prisoner incarcerated at the Federal Correctional Institution–Leavenworth ("FCIL"), filed this pro se civil action regarding his conditions of confinement at FCIL and USP Pollock.  On July 18, 2024, the Court entered a Memorandum and Order (Doc. 17) granting Plaintiff an opportunity to file a second amended complaint to cure the deficiencies set forth in the Memorandum and Order, and ordering FCIL officials to submit a limited *Martinez* Report regarding the availability of administrative remedies at FCIL.  The Court screened Plaintiff's Second Amended Complaint (Doc. 41) ("SAC"), and entered a Memorandum and Order (Doc. 67) ("M&O") granting Plaintiff the opportunity to file a third amended complaint to cure the deficiencies noted in the M&O.  This matter is before the Court for screening Plaintiff's Third Amended Complaint (Doc. 79) ("TAC").  The Court's screening standards are set forth in the Court's Memorandum and Order at Doc. 17.

## I.  Nature of the Matter Before the Court

Plaintiff alleges that the "Administration and staff members of the Federal Bureau of Prisons, intentionally and or with negligence, violated [his] federally protected constitutional rights, state and federal laws, Bureau of Prisons Policies, and inmate rights listed in the inmate intake and orientation handbook."  (Doc. 79, at 14.)  Plaintiff then lists the numbered rights from

1

the inmate handbook that were allegedly violated, designated as numbers 1 and 5–14. *Id*. at 14–15. Plaintiff then lists the circumstances that allegedly constitute violations of his Eighth Amendment rights, stating that they were listed in his previous complaint and cited by the Court. *Id*. at 15–16. Plaintiff asserts fifteen counts in his TAC.

## A. Count I

As Count I, Plaintiff alleges an Eighth Amendment violation based on the presence of black mold throughout the B-Upper Unit at FCIL. *Id*. at 19. Plaintiff alleges that B-Upper Unit is filled with black mold and it is in the cell vents, unit vents, and along the walls, ceilings, and stairwells. *Id*. at 20–21. Plaintiff alleges that black particles float through the air and are continuously falling on everything. *Id*. at 21. Plaintiff alleges that the mold has caused him to have severe headaches, nausea with vomiting, coughing, trouble breathing, and shortness of breath. *Id*. Plaintiff alleges that the prison has closed the unit three or four times, but opens it back up due to lack of bed space. *Id*. Plaintiff alleges that the prison continues to just paint over the accessible areas, but the black spots come right back. *Id*. Plaintiff alleges that some areas are not even accessible to allow painting, such as the cell vents that are "connected to the pipe chase which is filled with black mold, unit vents, top of ceilings/walls." *Id*.

## B. Count II

As Count II, Plaintiff alleges that there is black mold and a rodent infestation in the kitchen area where meals are prepared and inmates are required to eat. *Id*. at 19. Plaintiff alleges that there is rodent feces in the kitchen area and on the milk cartons, and when the kitchen workers arrive and turn on the lights "hundreds of rodents scurry from everywhere in the kitchen areas." *Id*. at 22. Plaintiff alleges that there are rodents the size of tennis shoes. *Id*. at 19. Plaintiff also alleges that they put in a drop ceiling to attempt to cover up the mold on the original ceiling. *Id*.

at 22.  Plaintiff alleges that inmates have become ill from the black mold and rodent feces on their food, milk cartons, and trays.  *Id*. at 23.  He claims that baked cakes and biscuits are left in the open overnight and rodents eat and/or defecate and urinate on them.  *Id*.

### C.  Count III

As Count III, Plaintiff alleges that he has been denied proper medical care, causing a "near death experience and emergency transport to hospital to receive over 6 pints of blood transfusion and emergency surgery on [his] stomach."  *Id*. at 19, 23.  Plaintiff alleges that during the week of August 27, 2022, he "requested medical attention due to sick feeling, vomiting, severe headache, severe heart rate increase, blood in [his] stools, [and] blood flow out [his] rectum."  *Id*. at 20. Plaintiff alleges that he was denied proper follow-up care with prescribed medications and necessary health aid for over 22 months. *Id*. at 23.  Plaintiff alleges that he passed out and hit his head and was rushed to the hospital on or about August 27, 2022 to July 2, 2022.  *Id*. at 23–24. Plaintiff alleges that he wrote numerous requests to staff for one week prior to passing out from blood loss.  *Id*. at 24.  Plaintiff alleges that the staff responsible are:  Director Collete Peters; Warden McConnell; Hospital Administrator Early, Physicians Assistant/RN Mr. Sasser; Lt. Williams; Unit Officers and Unit Manger "unknown names"; and "possible officer Strozer who witnessed [his] fall and passing out and transfer to hospital from the unit."  *Id*. Plaintiff adds that "[a]t FCI Leavenworth I was denied medical care, medication, follow up treatment/chronic care and health medical aids given at every other facility for over 22 months now."  *Id*. at 25.

### D.  Count IV

Plaintiff alleges that at USP Pollock he was denied dental care for a chipped incisor tooth and was told that they only pull teeth and do not repair them.  *Id*.  Plaintiff alleges that after he lost that tooth and arrived at FCIL, his front tooth chipped off "due to previous damage," and "finally

after over two-three weeks [he] was called to dental," but was told that the dentist called in sick that day. *Id*. Plaintiff alleges that he was never taken back to dental despite his requests and due to laziness and lockdowns. *Id*.

### E.  Count V

Plaintiff alleges an improper diet and the failure to follow nutritional guidelines and FBOP national menus. *Id*. at 26. Plaintiff alleges that he lost weight and had stomach cramping from July 7, 2023 to July 7, 2024, due to inadequate portions being served. *Id*. at 26–27. Plaintiff alleges that the failure to follow the guidelines is ongoing, due to the "failure to provide clean/sanitized eating area with negligence and deliberate indifference to inmate health." *Id*. at 26. Plaintiff alleges that staff are served "specialized food." *Id*. at 27. Plaintiff alleges that inmates only receive once piece of bread with meals and are not served "coffee/drink fortified vitamin packs." *Id*. Plaintiff alleges that Defendant Black stated that the only drink they are required to serve is water. *Id*.

### F.  Count VI

Plaintiff alleges a failure to follow proper administrative remedy procedures or to provide meaningful administrative remedies. *Id*.

### G.  Count VII

Plaintiff alleges a failure to provide a clean, safe, and healthy environment at USP Pollock, and at FCIL, based on being placed in a cell with no electricity/lighting. *Id*. at 28. Plaintiff alleges that this happened for three weeks in 2022 at USP Pollock, and for over a week at USPL in July 2023. *Id*. at 28–29. Plaintiff alleges that he complained for over a week at FCIL and finally Officer Swallow and another inmate came to Plaintiff's cell and replaced the lights and light switch. *Id*.

at 29.  Plaintiff alleges that this caused damage to his eyes/vision, and physical, mental and emotional damages.  *Id*.

### H.  Count VIII

Plaintiff alleges inhumane treatment based on the failure to provide required hygiene items, showers every three days, sanitation and cleaning supplies, clean clothing, water in the cells to wash/brush teeth, water to drink, water to flush toilets, and no portable toilets to use.  *Id*. at 30. Plaintiff alleges that inmates had to urinate/defecate in nasty toilets that would not flush, and in plastic bottles, bags, and even towels, that had to be passed through the cell door slot—the same slot used to serve their food.  *Id*.  Plaintiff alleges that these things were denied from July 7, 2023 to July 7, 2024, and especially during March and April of 2024.  *Id*.  Plaintiff alleges that the water was shut off for three days during the March–April lockdown to conduct a search, and for another 10 to 12 days after that due to an alleged water line break.  *Id*.  Plaintiff also claims that inmates were denied clean clothing, towels, and bedding for 45 to 60 days during this same timeframe.  *Id*. at 31.  Plaintiff alleges that inmates also were denied writing supplies, stamps, envelopes, paper, pencils, out-of-cell exercise, educational activities, medication, and medical aids, during this same time frame.  *Id*. at 31–32.  Plaintiff also mentions claims that he has asserted in other counts, including a violation of the First Step Act (Count XV), failure to provide medical care (Count II), and failure to provide dental care (Count III).  *Id*. at 32.

### I.  Count IX

Plaintiff's Count IX contains five words—"failure to provide hygiene items."  *Id*. at 33.

### J.  Count X

Plaintiff's Count X contains one sentence—"failure to provide clean laundry service for over 45 days to 60 days."  *Id*.

### K. Count XI

Plaintiff's Count XI contains one sentence—"failure to provide legal law library most of 2023 and 2024 due to corporal type punishments with no type of modified operations in place to ensure access." *Id*.

### L. Count XII

Plaintiff alleges a failure to provide recreation from July 7, 2023 to July 7, 2024, "with no modified operations in place to ensure out of cell recreation causing physical, mental, and emotional damage." *Id*. Plaintiff then notes that these items "are basically covered in the inhumane treatments described in count 8." *Id*.

### M. Count XIII

Plaintiff alleges that "staff" intentionally lost or threw away his property and failed to follow policy during March and April 2024. *Id*. at 34. Plaintiff acknowledges that the Court has denied this claim, and he seeks to reserve his right to appeal. *Id*.

### N. Count XIV

Plaintiff claims that he has been denied family communications, and access to the courts and Federal/State representatives. *Id*. Plaintiff alleges that this claim was described in Count VIII. *Id*. Plaintiff alleges that his telephone numbers for family/friends were blocked by staff, then unblocked, and then blocked again. *Id*. Plaintiff alleges that they "remain blocked." *Id*. Plaintiff alleges that this was done in retaliation for filing this case and grievances. *Id*.

### O. Count XV

As Count XV, Plaintiff alleges retaliation and harassment by the Federal Bureau of Prisons Administration and employees. Plaintiff also alleges "denial of equal protection of the law and to be treated the same as similarly situated inmates." *Id*. at 35. Plaintiff alleges that he has been

denied commissary privileges for nine months, blocking his ability to purchase hygiene items that "they" refuse to provide for him. *Id*. Plaintiff alleges that they have denied him stamps, envelopes, paper, and pens needed for legal work and family communications. *Id*. Plaintiff alleges that they have denied him the ability to purchase emails and family communications, blocked family/friends phone numbers, denied him the ability to use paid services in the law library, denied him his trust fund account and refused to process BP-199s for family/child support and to tithe, denied access to courts and Federal/State representatives, and failed to answer grievances. Plaintiff also alleges that he was denied medical care, medical supplies, medicine, proper dental care and tooth repair, vision care, mental health care, and failed to provide him with copies for legal work to the court and federal/state representatives and the President of the United States. *Id*. at 35–36. Plaintiff also alleges that he is not placed within 500 miles of his family as required by the First Step Act. *Id*. at 36. Plaintiff also alleges that they have stolen $200 from his prison account. *Id*. Plaintiff alleges that they continuously violate his right to use his trust fund account. *Id*. at 37.

## II. Discussion

### A. Previous Court Orders

The Court has entered prior orders in this case "direct[ing] Plaintiff on what claims he cannot include in his third amended complaint and [directing] him to specify what injunctive relief he is seeking." Doc. 78, at 2; *see also* Doc. 72, at 4 ("In filing his third amended complaint, Plaintiff should note the deficiencies set forth in the M&O.").

Plaintiff continues to include claims in his TAC that the Court previously found failed to state a claim. The Court has held in previous orders that: (1) a *Bivens* remedy is not available for Plaintiff's claims seeking monetary relief (Doc. 17, at 9–12; Doc. 67, at 7; Doc. 78, at 2, 3); (2) any request for injunctive relief must be obtained from federal officials in their official capacities

(Doc. 17, at 12);  (3) Plaintiff does not have a cause of action regarding his property (Doc. 22, at 6; Doc. 67, at 9–10); and (4) Plaintiff does not have a cause of action based on the failure to respond to grievances or the untimely responses to grievances (Doc. 67, at 8–9; Doc. 78, at 2).  Based on the reasoning set forth in the Court's prior orders, Plaintiff's claims in Counts VI (administrative grievance procedures) and Count XIII (lost property), are dismissed for failure to state a claim.

## B.  Black Mold and Rodent Infestation

The Court finds that Plaintiff's claims in Counts I and II pass screening.

## C.  Medical and Dental Care

Plaintiff alleges in Count III that he was denied proper medical care.  However, most of the factual allegations relate to his medical care at USP Pollock in 2022 and 2023.  Plaintiff was transferred to FCIL around August 10, 2023.  *See* Doc. 35–1, at 2–3; Doc. 35–3; Doc. 35–5, at 2. Plaintiff's claim relates to his medical care around August 27, 2022, when he was rushed to the hospital.  (Doc. 79, at 20–24.)  He names as defendants for this claim:  FBOP Director Collete Peters; USP Pollock Warden McConnell; USP Pollock Hospital Administrator Early, USP Pollock Physician's Assistant/RN Mr. Sasser; USP Pollock Lt. Williams; Unit Officers and Unit Manger "unknown names"; and "possible officer Strozer who witnessed [his] fall and passing out and transfer to hospital from the unit."  *Id*.  All of these defendants, with the exception of the FBOP Director, are staff from USP Pollock.  Plaintiff is no longer housed at USP Pollock and any request for injunctive relief from these defendants would be moot.  As the Court previously advised Plaintiff, injunctive relief cannot remedy past harms that are not ongoing.  *See Makthepharak v. Kelly*, 2025 WL 1282649, at *12 (D. Kan. 2025) ("Claims for prospective injunctive relief 'become[ ] moot once the event to be enjoined has come and gone.'") (quoting *Citizen Ctr. v.*

*Gessler*, 770 F.3d 900, 907 (10th Cir. 2014)).  Any claims regarding Plaintiff's medical care at USP Pollock are dismissed as moot.

Plaintiff transferred to FCIL around August 10, 2023.  Regarding medical care at FCIL, Plaintiff provides in his TAC that "[a]t FCI Leavenworth I was denied medical care, medication, follow up treatment/chronic care and health medical aids given at every other facility for over 22 months now." *Id*. at 25.  Plaintiff doesn't name a defendant, or indicate who denied him medical care, what follow up care he is seeking, what medical aids he needs, or what medication he was denied.  However, Plaintiff does specify what medical care his is seeking in his motion for injunctive relief at Doc. 80.  The Court will allow Plaintiff's claims regarding his medical care at FCIL to pass screening.

Likewise, in Count IV Plaintiff makes allegations regarding his dental care at USP Pollock. He then claims that after he arrived at FCIL, his front tooth chipped off "due to previous damage and hard substance in food at chow hall," and "finally after over two-three weeks [he] was called to dental," but was told that the dentist called in sick that day. *Id*. at 25.  Plaintiff alleges that he was never taken back to dental despite his requests and due to laziness and lockdowns. *Id*. Plaintiff alleges that due to the lockdowns, there were no scheduled call outs for dental care. *Id*. at 26.  Plaintiff's claims regarding his dental care at USP Pollock are dismissed as moot.  The Court will allow Plaintiff's claim regarding his dental care at FCIL to pass screening.

### D.  Food at FCIL

As Count V, Plaintiff alleges an improper diet and the failure to follow nutritional guidelines and FBOP national menus, claiming that he lost weight and had stomach cramping from July 7, 2023 to July 7, 2024, due to inadequate portions being served. *Id*. at 226–27.  Plaintiff alleges that the failure to follow the guidelines is ongoing, due to the "failure to provide

clean/sanitized eating area with negligence and deliberate indifference to inmate health." *Id.* at 26. Plaintiff alleges that staff are served "specialized food." *Id.* at 27. Plaintiff alleges that inmates only receive once piece of bread with meals and are not served "coffee/drink fortified vitamin packs." *Id.* Plaintiff alleges that Defendant Black stated that the only drink they are required to serve is water. *Id.*

"Prison officials must ensure inmates receive the basic necessities of nutritionally adequate food." *McCarty v. Aramark*, 2022 WL 3571412, at *1 (10th Cir. 2022) (unpublished) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (brackets and internal quotations omitted)). Plaintiff makes a bald conclusion that the food was nutritionally inadequate, but his only factual support is that he lost weight, only received one slice of bread with meals, and was denied coffee or drinks fortified with vitamins. He does not claim that his food was spoiled, that he had a medical order regarding his diet, or give any other indication regarding the amount of food served or the quality of the food.

To state an Eighth Amendment clam regarding deprivation of food, "an inmate must allege both an objective and subjective element"—"[t]he objective element requires that the inmate allege a 'sufficiently serious' deprivation that denied the inmate 'the minimal civilized measures of life's necessities.'" *Womble v. Chrisman*, 770 F. App'x 918, 923 (10th Cir. 2019) (unpublished) (citing *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (unpublished) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998))). To meet the subjective element, Plaintiff must show that "the prison official knew of and disregarded risk to inmate health and safety." *Id.* (citing *Barney*, 143 F.3d at 1310 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

It appears that part of Plaintiff's claim relates to food served from July 7, 2023 to July 7, 2024. Plaintiff alleges that the issue that is ongoing relates to the unsanitary conditions in the

kitchen at FCIL.  "Prisons must provide inmates with 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it."  *Womble v. Chrisman*, 770 F. App'x 918, 923 (10th Cir. 2019) (citation omitted).  However, that claim regarding the conditions in FCIL's kitchen is covered in Count II, which survives screening.   Plaintiff has failed to state an additional claim regarding his food.  *See Taylor v. Pittsburg, KS Police Dep't*, 2022 WL 2274123, at *3 (D. Kan. 2022) (finding that plaintiff failed to allege specific facts indicating a substantial or immediate danger to plaintiff's health and well-being) (citing *Toevs v. Milyard*, 563 F. App'x 640, 643, 645–46 (10th Cir. 2014) (affirming dismissal of claim involving denial of nine consecutive meals during a three-day period); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (finding the withholding of seven meals over a period of six days, "does not result in a health risk to the prisoner sufficient to qualify as a 'wanton infliction of pain' where the prisoner continues to receive adequate nutrition."); *McGee v. Collett*, 2020 WL 4569155 *2 (D. Kan. 2020) (denial of two meals during a week's time does not state an Eighth Amendment claim)).  Plaintiff's claim in Count V is dismissed for failure to state a claim.

### E.  Past Conditions and Failure to State a Claim

Plaintiff has also asserted various one-sentence claims and claims based on past conditions at FCIL or USP Pollock.  Plaintiff alleges in Count VII that he did not have lighting in his cell at USP Pollock in 2022, and for over a week at FCIL in July 2023.  Any claim based upon his conditions at USP Pollock in 2022 is dismissed as moot.  Plaintiff acknowledges that his cell at FCIL did not having lighting for over a week in July 2023, and then an officer and inmate came to his cell and replaced the lights and light switch.  Plaintiff's claim does not rise to the level of a

constitutional violation, and the issue is not ongoing. Plaintiff's claims in Count VII are dismissed as moot.

Plaintiff's claim in Count IX that there was a "failure to provide hygiene items," and his claim in Count X that there was a failure to provide clean laundry for over 45 to 60 days, are dismissed for failure to state a claim. Plaintiff fails to give any factual support for these claims. Furthermore, Plaintiff has already asserted a claim regarding hygiene items and clean laundry in Count VIII.

Similarly, his claim in Count XI contains one sentence regarding the failure to provide law library access during 2023 and 2024, and his claim in Count XII alleges a failure to provide recreation from July 7, 2023 to July 7, 2024. Plaintiff's claims regarding past conditions in Counts XI and XII are dismissed as moot.

### F. Count VIII

Plaintiff's claims in Count VIII relate to the conditions at FCIL during the lockdown in March and April of 2024. Plaintiff alleges that he was denied hygiene items, showers every three days, sanitation and cleaning supplies, clean clothing, and water to drink and flush toilets. (Doc. 79, at 30.) Plaintiff alleges that inmates had to urinate/defecate in nasty toilets that would not flush, and in plastic bottles, bags, and even towels, that had to be passed through the cell door slot—the same slot used to serve their food. *Id*. Plaintiff alleges that these things were denied from July 7, 2023 to July 7, 2024, and especially during March and April of 2024. *Id*. Plaintiff alleges that inmates also were denied writing supplies, stamps, envelopes, paper, pencils, out-of-cell exercise, educational activities, medication, and medical aids, during this same time frame. *Id*. at 31–32. Plaintiff also mentions in Count VIII that he has been denied dental care because his tooth remains broken, and claims that the dentist, Mr. Nowlin, and Hospital Administrator Jones,

are responsible.  (Doc. 79, at 32.)  Plaintiff claims they are deliberately indifferent "and it is the same with [his] need for glasses/vision care."  *Id.*

Plaintiff's claims regarding his medical and dental care are already alleged in Counts III and IV.  In his motion for injunctive relief (Doc. 83), Plaintiff indicates that he has not received hygiene items since arriving at FCIL.[1]  The Court will allow the claim regarding the failure to provide hygiene items to pass screening.  The remaining claims in Count VIII are dismissed as moot.

### G.  Phone Access to Family/Friends

 Plaintiff alleges in Count XIV that his telephone numbers for family/friends remain blocked.  The Court will allow this claim to pass screening to the extent that Plaintiff seeks injunctive relief to provide a means of communication with his family/friends.  To the extent Plaintiff alleges that this was done in retaliation, any retaliation claim is denied as set forth in the discussion of Count XV below.

### H.  Count XV

#### 1) Trust Fund Access and FRP

Plaintiff alleges in Count XV that he has been denied access to his trust fund account and therefore the ability to purchase commissary privileges, hygiene items, stamps, envelopes, paper, pens, emails, paid services in the law library, and to pay family/child support and to tithe.  The Court found  in its October 2, 2024 Memorandum and Order, that Plaintiff did not seek any relief in his SAC regarding his frozen account, the BP-199s, or his Financial Responsibility Plan ("FRP"). (Doc. 43, at 3, 7.) Although Plaintiff attempts to raise the same claim in his TAC, the Court also noted that Plaintiff had not exhausted his administrative remedies regarding his frozen

---

[1] Although Plaintiff also alleges in Doc. 83 that writing supplies are not being provided, the Court finds that Plaintiff's filings in this case refute such a claim.

account or FRP, and in any event, such relief must be sought under 28 U.S.C. § 2241.  (Doc. 43, at n.2) (citing  *Neal v. Starr*, 2023 WL 11930898, at *2 (D. Colo. 2023), *adopted* 2023 WL 11930905 (D. Colo. 2023) (construing Neal's challenge to his payment schedule and placement in FRP refusal status as a petition under 28 U.S.C. § 2241 attacking the execution of his sentence) (citing *See, e.g.*, *Dade v. Sanders*, 510 F. App'x 714, 717 n.5 (10th Cir. 2013) (citing *Matheny v. Morrison*, 307 F.3d 709, 711–12 (8th Cir. 2002) (explaining that claims "challeng[ing] the IFRP's payment schedule . . . concern the execution of sentence, and are therefore correctly framed as § 2241 claims")); *Wallette v. Wilner*, 321 F. App'x 735, 738 (10th Cir. 2009) ("Because a challenge to the BOP's authority to set restitution payment terms goes to the execution of [petitioner's] sentence, this claim falls within those properly raised in a petition for habeas corpus under § 2241."); *Davis v. Wiley*, 260 F. App'x 66, 68 & n.2 (10th Cir. 2008) (explaining that a claim challenging "the BOP's authority under the IFRP to establish and enforce payment amounts [the petitioner] must follow in connection with the court-ordered special assessment and restitution" was "properly raised in a § 2241 petition" because it "attack[ed] the execution of [the petitioner's] sentence")).  Based on the Court's prior reasoning, Plaintiff's claims in Count XV regarding his FRP and the freezing of his trust fund account are dismissed without prejudice.

### 2)  Retaliation and Equal Protection

Plaintiff also claims in Count XV: retaliation and  harassment by the Federal Bureau of Prisons Administration and employees; and the "denial of equal protection of the law and to be treated the same as similarly situated inmates."  (Doc. 79, at 35.)  Plaintiff fails to provide any support for an equal protection claim and fails to point to any similarly situated inmate.  Plaintiff's equal protection claim in Count XV is dismissed for failure to state a claim.

Plaintiff also fails to state a claim based on retaliation or harassment in Count XV. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff initially argued that his new case manager was Dr. Clark's son, and that Case Manager Clark placed Plaintiff on FRP refusal status as retaliation for Plaintiff filing grievances against Dr. Clark. The Court found in a prior order that Plaintiff was subsequently informed that Case Manager Clark was not related to Dr. Clark. *See* Doc. 43, at 4–5. In his prior motion seeking

injunctive relief based on the freezing of his account, Plaintiff acknowledged he was placed on refusal status based on his refusal to change the amount of his FRP payments from $50.00 per quarter to $250.00 per month. *Id.* at 4–5 (citing Doc. 30, at 4). Plaintiff alleged that the change was due to him having $300.00 on his account, and because Plaintiff had filed grievances against Dr. Clark—Case Manager Clark's father. *Id.* at 5 (citing Doc. 30, at 4.) The Court also noted that at some point after Plaintiff filed this case, his grievance regarding the denial of his BP-199 forms was informally resolved in his favor and Plaintiff signed a Withdrawal of Administrative Remedy form relating to the issue. *Id.* at 6–7. To the extent new issues with Plaintiff's FRP arose after filing this action, he should exhaust his administrative remedies prior to filing a new civil rights action or a petition under 28 U.S.C. § 2241 regarding his FRP.

Plaintiff fails to allege adequate facts in support of his retaliation claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive. Plaintiff's claim based on retaliation/harassment is dismissed for failure to state a claim.

### 3) Court Access

To the extent Plaintiff alleges in Count XV that he has been denied court access, the claim is dismissed for failure to state a claim. It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey*, 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

16

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Burnett v. Jones*, 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff has not alleged an actual injury. The claim is not plausible, particularly since he was able to file this action in federal district court, along with 53 additional pleadings in this case. Plaintiff also asserts a court access claim in Count XIV, and states that his claim was described in Count VIII. Plaintiff's court access claims in Counts VIII, XIV, and XV, are dismissed for failure to state a claim.

### 4) Transfer Request

Plaintiff also claims in Count XV that his requests to be transferred within 500 miles of his

home pursuant to the First Step Act have been denied. (Doc. 79, at 36.)  A prisoner can make a request under the First Step Act, 18 U.S.C. § 3621(b), to be transferred to a facility within 500 miles of family.  *See* 18 U.S.C. § 3621(b) (as amended by the First Step Act of 2018, P.L. 115-391, December 21, 2018, 132 Stat. 5194, at Sec. 601).  However, the statute precludes judicial review of the BOP's placement decisions. *Wills v. Barnhardt*, 2022 WL 4481492, at *4 (10th Cir. 2022) (unpublished) (finding that the district court correctly held that § 3621(b) deprived it of jurisdiction to review the BOP's decision on the prisoner's transfer request).  "The final sentence of § 3621(b) expressly states that '[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.'"  *Id*.  Any claim regarding the denial of his transfer request is dismissed for lack of jurisdiction.

## III.  Injunctive Relief

"[S]overeign immunity is not a bar to an action for injunctive relief against prison officials acting in their official capacity, . . . even though such an action is one against the United States." *Goines v. Pugh*, 152 F. App'x 750, 752–53 (10th Cir. 2005) (unpublished) (citing *Simmat v. U.S. Bur. of Prisons*, 413 F.3d 1225, 1232–33 (10th Cir. 2005), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199, 216 (2007)).  "Congress waived sovereign immunity for such claims . . . [and] jurisdiction over claims for constitutional violations involving prison conditions against prison officials acting in their official capacities exists under 28 U.S.C. §§ 1331 and/or 1361." *Id*. at 753 (citing *Simmat*, 413 F.3d at 1233, 1228).

Federal law provides for appropriate remedies with respect to prison conditions as follows:

> **(a) Requirements for relief.--**
> **(1) Prospective relief.--(A)** Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly

drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a).

Plaintiff is only entitled to assert official capacity claims for injunctive relief, and the proper defendant is the current FCIL warden. The Court's jurisdiction is limited to claims against those with authority to provide such relief. A warden is the proper defendant for injunctive relief because "the warden . . . is responsible for ensuring that any injunctive relief is carried out." *Crain v. Wilks*, 2025 WL 2049312, at *4 (N.D. Ind. 2025) (citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)); *see also Clark v. Galipeau*, 2023 WL 4759312, at *1 (7th Cir. 2023) ("[T]he district court correctly designated Westville's warden in his official capacity as the proper defendant."); *see also Clark v. Raemisch*, 2016 WL 8710707, at n.2 (D. Colo. 2016) ("Official-capacity claims against Defendant Raemisch should remain, because the proper defendant for injunctive relief is any individual with the authority to effect relief.") . "[I]t is well established that prison administrators may be named as defendants for claims seeking injunctive relief even where they had no personal involvement in the alleged wrongs." *Rodrigues v. Special Treatment Unit*, 2024 WL 5264262, at n.4 (N. N.J. 2024) (citing *see Megginson v. Caldwell*, 2015 WL 13229496, at *5 (D.N.J. Dec. 4, 2015) (holding that prison Warden may be a proper defendant to a claim seeking an injunction based on denial of necessary medical care despite his lack of personal involvement in unconstitutional conduct) (citing *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) ("[A] corrections department secretary and prison warden were proper defendants in a § 1983 case because '[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged

constitutional violation. Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief.' "); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("Though Gonzalez does not allege any specific involvement by Gaetz in the treatment of his hernia, the warden . . . is a proper defendant since Gonzalez seeks injunctive relief . . . . If Gonzalez was seeking only damages, the warden's lack of personal involvement would be conclusive, but since Gonzalez also seeks injunctive relief it is irrelevant whether the warden participated in the alleged violations.")); *Mitchell v. Jones*, 2022 WL 2657365, at *6 (W.D. Pa. Mar. 9, 2022) (collecting cases)); *see also Megginson v. Caldwell*, 2015 WL 13229496, at *5 (D. N.J. 2015) (finding warden proper defendant for claim that plaintiff was not receiving his medication). Therefore, the current FCIL warden is the proper defendant, and the Court will direct the Clerk to serve FCIL Warden Crystal Carter.

Plaintiff raises claims based on his conditions at USP Pollock and for prior conditions during the lockdown at FCIL. Any issues that are not currently ongoing are dismissed as moot. Plaintiff is no longer housed at USP Pollock and therefore any request for injunctive relief against these defendants would be moot. *See Cobb v. Howard*, 2023 WL 3011737, at *4 (D. Ariz. 2023) (where plaintiff transferred from USP-Tucson to USP-Marion, the court stated that "Plaintiff fails to show that any named or unnamed USP-Tucson employees have authority to order injunctive relief at USP-Marion"). Likewise, a request for injunctive relief from the prior FCIL warden would be moot. *See Cobb v. Howard*, 2022 WL 16710460, at *3 (D. Ariz. 2022) (finding that prior warden "is no longer a proper Defendant for Plaintiff's claim"); *Dillon v. CoreCivic*, 2022 WL 616965, at *3 (D. Nev. 2022) (stating that "parties sued in their official capacities for injunctive relief must have the authority to implement the relief sought" and prior warden "cannot

implement the injunctive relief plaintiffs seek") (citation omitted).   "[A] defendant official must

have the authority to provide the requested relief."  *Parkman v. O'Connor*, 2020 WL 4284485, at

n.6 (D. Conn. 2020) (citing *Scozzari v. Santiago*, No. 3:19-CV-00229 (JAM), 2019 WL 1921858,

at *6 (D. Conn. Apr. 29, 2019) (a claim for injunctive relief may only proceed against a defendant

to the extent that a defendant has the power to remedy the alleged on-going constitutional

violation); *Ex parte Young*, 209 U.S. at 157 (defendant official must have some connection with

enforcement of allegedly unconstitutional act); *Loren v. Levy*, No. 00 Civ. 7687(DC), 2003 WL

1702004, at *11 (S.D.N.Y. Mar. 31, 2003) ("actions involving claims for prospective . . . injunctive

relief are permissible provided the official against whom the action is brought has a direct

connection to, or responsibility for, the alleged illegal action."); s*ee also Marshall v. Annucci*, No.

16-CV-8622 (NSR), 2018 WL 1449522, at *8 (S.D.N.Y. Mar. 22, 2018) (retired defendants do

not have the authority to rectify any ongoing constitutional violations)).

Plaintiff was ordered to set forth his request for injunctive relief in his TAC.  The Court

held that "[t]o the extent Plaintiff is seeking injunctive relief, he should specify the relief sought

in his third amended complaint."  (Doc. 67, at 8.)  The Court also stated that:

> The Court is concerned with Plaintiff's claims regarding black mold,
> a rodent infestation, and the lack of medical care and hygiene items.
> However, Plaintiff should specify the injunctive relief he is seeking
> to remedy the situations going forward.   Issues based on the
> lockdown in March and April of 2024 would not be able to be cured
> by injunctive relief unless the issues are ongoing.

*Id*.  Despite the Court's order, Plaintiff merely states in his TAC that he is seeking "monetary relief

in an unspecified amount and equitable relief."  (Doc. 79, at 38.)  Instead, Plaintiff chose to file

five separate motions for injunctive relief after submitting his TAC.

Plaintiff has filed five separate motions for injunctive relief, seeking different forms of

injunctive relief in each motion. (Docs. 80–84.)  He titles the first four motions as First, Second,

Third, and Fourth Motions "for Injunctive Relief for the Third Amended Complaint Ordered by the Court." *Id*. Plaintiff also filed a "Motion for Injunctive Relief/Harassment and Retaliation, for the Third Amended Complaint." (Doc. 84.)

In his first motion, Plaintiff seeks "proper medical care and items which have been withheld and denied by the prison administration/medical staff," including "a yearly physical, examination by an outside physician when necessary, medical items always provided at all other facilities, medication, and proper required dental care and vision care." (Doc. 80, at 1.) Plaintiff then mentions his "near death experience" at USP Pollock. *Id*. at 2. Plaintiff alleges that currently at FCIL, he is in need of a physical examination with a medical provider specializing in "deep vein trombous [sic], inflammation of the legs, and osteoporous [sic]." *Id*. Plaintiff also alleges that he needs dental care to repair his front tooth, and fillings to other teeth. *Id*. Plaintiff also alleges that he needs an eye examination and glasses. *Id*. Plaintiff alleges that all his requests for medical and dental care have either been ignored or denied. *Id*. Plaintiff also alleges that his requests for medical shoes, "Ted" support hose, medicine, a knee sleeve, a wrist sleeve, and eyeglasses have been ignored. *Id*. Plaintiff also asks to be transferred closer to home pursuant to the First Step Act. Any relief regarding his transfer request would be denied as set forth above.

In his second motion, Plaintiff seeks an order requiring FCIL to immediately close B-Upper Unit due to severe black mold in the unit. (Doc. 81, at 1.) Plaintiff claims that inmates are locked in their cells in the unit with only two days each week of "normal orderly running of the institution." *Id*. at 3. Therefore, Plaintiff also requests the normal operation of the unit until it can be closed. *Id*. He also seeks to have his lungs and blood tested by outside medical professionals. *Id*. at 4. Lastly, Plaintiff asks the Court to order his transfer to a facility closer to home pursuant to the First Step Act. *Id*. at 4–5. Again, the transfer request would be denied as set forth above.

22

In his third motion, Plaintiff requests that the kitchen area at FCIL be closed due to black mold and the rodent problem.  (Doc. 82, at 1.)

In his fourth motion, Plaintiff seeks an order requiring FCIL staff to provide each inmate with hygiene items each month, including 4–6 bars of soup, 6–8 razors, one toothbrush, one toothpaste, one shampoo, and one deodorant and comb.  (Doc. 83, at 1.)  Plaintiff claims that he has not received hygiene items since his arrival at FCIL in July 2023.  *Id*. at 2.  Plaintiff also alleges that writing supplies have not been provided.  *Id*. at 2–3.

In his motion for injunctive relief/harassment,  Plaintiff asks the Court to order the BOP to appoint a new warden or interim warden, and to prohibit all named defendants from having any further communications with Plaintiff "or any type of harassments and interactions."  (Doc. 84, at 3.)  He also asks to have the phone numbers for his family/friends immediately unblocked.  *Id.*

 "The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"Except as to notice and duration, the legal standards governing a temporary restraining order ("TRO") and a preliminary injunction are the same."  *Vietti v. Welsh & McGough, PLLC*, 2022 WL 1288314, at *2 (N.D. Okla. April 30, 2022) (citing *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.")).  "The primary difference between a TRO and a preliminary injunction is that a TRO may issue without

23

notice to the opposing party and that a TRO is of limited duration." *Id.* (citing Fed. R. Civ. P. 65(b)).

Plaintiff has not argued that a TRO is warranted, nor has he indicated why notice and an opportunity to respond should not be required. The Court finds that a temporary restraining order is not warranted, and will allow Defendant Carter to respond to the motions seeking injunctive relief. Plaintiff mentions that these issues have been brought before the Court "for over one year now." (Doc. 81, at 2.) He also states that he should not have to wait for injunctive relief. (Doc. 82, at 2.) The Court previously noted that it was concerned with some of the conditions at FCIL. However, the delay in this case has been the result of numerous motions and requests for extensions of time filed by Plaintiff.

Despite multiple Court orders directing Plaintiff to refrain from filing any motions until the Court finished the screening process, Plaintiff has filed 53 pleadings in this case, including approximately 41 motions. *See* Doc. 17, at 21 ("No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared and filed"); Doc. 22, at 7 ("Plaintiff should refrain from filing any additional motions until the Report has been filed and the Court has screened any second amended complaint that he files."); Doc. 29, at 2 ("Plaintiff should refrain from filing anything other than his second amended complaint until the report has been filed and reviewed by the Court."); Doc. 67, at 1, 2, 5 ("The Court cautioned Plaintiff on more than one occasion that he should refrain from filing any motion or other pleading until the Court had screened his SAC," and "Despite the Court's orders to refrain from filing motions and the pending Interlocutory Appeal, Plaintiff filed fourteen motions and an objection," and "His claims should all be included in his third amended complaint and not set forth in various motions and pleadings in this case"); Doc. 72, at 3, 4 ("Despite the Court's directives in the M&O, Plaintiff

continues to file motions. . . Plaintiff should refrain from filing any additional motions, notices, or information with the Court until he has submitted his third amended complaint and it has been screened by the Court.").

Plaintiff has also filed seven  motions seeking extensions of time, including three motions seeking extensions of time to submit his TAC.  Plaintiff was even cautioned that "the Court [was] not inclined to grant any further extensions absent compelling circumstances" and that Plaintiff "has a duty to prosecute his case."  (Doc. 78, at 3.)

## IV.  Conclusion

The Court finds that the following claims pass screening:  the claims in Counts I and II; the medical and dental claims regarding care at FCIL in Counts III and IV; the claim regarding failure to provide hygiene items in Count VIII; and the claim regarding the lack of communication with family/friends in Count XIV.

The Court finds that the following claims are dismissed for failure to state a claim:  claims in Counts V, VI, IX, X, and XIII; any retaliation claim and court access claim in Count XIV; and the equal protection, retaliation/harassment, and court access claims in Count XV.

The Court finds that the following claims are dismissed as moot:  the medical and dental claims regarding care at USP Pollock in Counts III and IV; the claims in Counts VII, XI, and XII; and all claims in Count VIII except for the claim regarding failure to provide hygiene items.

The Court finds that the following claims are dismissed for lack of jurisdiction:  Plaintiff's claims in Count XV regarding his FRP and the freezing of his account, and regarding the denial of Plaintiff's transfer under the First Step Act.

The Court will direct the Clerk to send waiver of service to Defendant Crystal Carter.  The remaining defendants are dismissed from this action.

**IT IS THEREFORE ORDERED BY THE COURT** that the following claims pass screening: the claims in Counts I and II; the medical and dental claims regarding care at FCIL in Counts III and IV; the claim regarding failure to provide hygiene items in Count VIII; and the claim regarding the lack of communication with family/friends in Count XIV.

**IT IS FURTHER ORDERED** that the following claims are dismissed for failure to state a claim: claims in Counts V, VI, IX, X, and XIII; any retaliation claim and court access claim in Count XIV; and the equal protection, retaliation/harassment, and court access claims in Count XV.

**IT IS FURTHER ORDERED** that the following claims are dismissed as moot: the medical and dental claims regarding care at USP Pollock in Counts III and IV; the claims in Counts VII, XI, and XII; and all claims in Count VIII except for the claim regarding failure to provide hygiene items.

**IT IS FURTHER ORDERED** that the following claims are dismissed for lack of jurisdiction: Plaintiff's claims in Count XV regarding his FRP and the freezing of his account, and regarding the denial of Plaintiff's transfer under the First Step Act.

**IT IS FURTHER ORDERED** that the Clerk is directed to send waiver of service to Defendant Crystal Carter. The remaining defendants are dismissed from this action.

**IT IS SO ORDERED**.

**Dated July 28, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**