IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DONALD JOSEPH WEST,

Plaintiff,

v.                                                          Case No. 24-3051-JWB

CRYSTAL CARTER, FCI
LEAVENWORTH, WARDEN,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for summary judgment[1] (Doc. 111); Plaintiff's objections (Docs. 88, 91, 93) to Judge Lungstrum's memorandum and order (Doc. 85), which the court construes as motions for reconsideration; Plaintiff's motions for injunctive relief (Docs. 95, 96); Plaintiff's motion for declaratory judgment (Doc. 106); Plaintiff's motion to compel discovery (Doc. 129); Plaintiff's motions for appointment of counsel (Docs. 137, 140); Plaintiff's motion for evidence and injunctive relief (Doc. 138); and Plaintiff's motion for order for blood and lung testing (Doc. 139). The motions are sufficiently briefed and ripe for decision. (Docs. 99, 102, 108, 110, 115, 123, 126.)[2] For the reasons stated herein, Defendant's motion for

---

[1] Defendant's motion was filed as a motion to dismiss or, in the alternative, for summary judgment. After review, the court has considered the exhibits attached to the motion in ruling; therefore, it will treat the motion as one for summary judgment. As required by D. Kan. Rule 56.1(d), Plaintiff was provided notice of Defendant's motion for summary judgment along with instructions on how to properly respond. (Doc. 113.)

[2] After Defendant filed her reply brief (Doc. 126), Plaintiff filed five documents (Docs. 127, 130, 134, 141) which are textbook examples of surreplies and were filed without first requesting leave of court or explaining the "rare circumstances" justifying an additional filing. *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998). D. Kan. Rule 7.1c limits briefing on motions to: a motion (with supporting memorandum), a response, and a reply. Thus, the court will not consider the unauthorized surreplies (Docs. 127, 130, 134, 141). *See Sallaj v. Feiner*, No. 23-CV-01172-EFM-BGS, 2024 WL 112303, at *2 (D. Kan. Jan. 10, 2024) (citing *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) ("Plaintiffs are not excused from following procedural rules— including local rules—simply because they choose to proceed pro se.")).

1

summary judgment (Doc. 111) is GRANTED; Plaintiff's motions for reconsideration (Docs. 88, 91, 93) are DENIED; and Plaintiff's pending motions (Docs. 95, 96, 106, 129, 137, 138, 139, 140) are DENIED AS MOOT.

## I.      Facts & Procedural History

The following facts are taken from the parties' submissions.[3]  Donald West ("Plaintiff") is an inmate in the custody of the United States Bureau of Prisons ("BOP") at the Federal Correctional Institution in Leavenworth, Kansas ("FCIL").  (Doc. 79 at 1.)  Plaintiff brings this action pro se and filed suit on April 11, 2024.  (Doc. 1.)  On May 22, 2025, Plaintiff was granted an opportunity to file a third amended complaint ("TAC").  (Doc. 78.)  Plaintiff's claims primarily challenge his conditions of confinement.  He alleges that the "[a]dministration and staff members of the [BOP], intentionally and or with negligence, violated [his] federally protected constitutional rights, state and federal laws, [BOP] Policies, and inmate rights listed in the inmate intake and orientation handbook."  (Doc. 79 at 14.)  As to the specific nature of these violations, Plaintiff describes the existence of mold, rodents, and otherwise unsanitary conditions at FCIL, a general lack of medical and dental care, poor quality of food, his family members being blocked from contacting him, and retaliation and harassment by prison staff, among others.  Altogether, Plaintiff brought fifteen counts against a host of various state officials and FCIL employees.

On July 28, 2025, Judge Lungstrum screened the TAC pursuant to 28 U.S.C. § 1915A and dismissed all but six counts as well as all defendants except the FCIL's Warden, Crystal Carter

---

[3] Plaintiff supplied facts in his verified amended complaint and other pleadings which he relies on in his response to Defendant's summary judgment motion. (Docs. 79, 123.) The Tenth Circuit has held that a "verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out" in Rule 56 of the Federal Rules of Civil Procedure. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (quotation marks omitted).  Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The court relies only on the statements provided in Plaintiff's pleadings which meet these requirements.

("Defendant" or "Warden"). (Doc. 85.) Plaintiff filed three objections to that order. (Docs. 88, 91, 93.) On October 6, 2026, Plaintiff filed two motions for injunctive relief. (Docs. 95, 96.) In them, Plaintiff largely rehashes the same allegations described in the TAC. On October 9, 2025, this court directed Defendant to respond to Plaintiff's motion (Doc. 95), specifically the allegations regarding the presence of mold and rodents at the FCIL. (Doc. 98.) Defendant did so. (Doc. 99.)

Shortly thereafter, on November 10, 2025, Defendant filed a motion to dismiss or in the alternative for summary judgment. (Doc. 111.) Among other things, Defendant contends that the six claims that survived screening must be dismissed because Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e. The motion is now fully briefed, and the court is prepared to rule.

## II.    Standard

Summary Judgment. Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247– 48 (1986). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *LifeWise*

*Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan. R. 56.1(a). "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id*. To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1). Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted. *Coleman v. Blue Cross Blue Shield of Kan., Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in [the movant's] summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

Pro Se Standard. The court is mindful of Plaintiff's pro se status. As such, his pleadings are construed liberally. *Hall*, 935 F.2d at 1110. But this does not alleviate Plaintiff's burden of coming forward with evidence to support his claims as required by Federal Rule of Civil Procedure 56. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Further, the court may not assume the role of advocate for Plaintiff. *Van Deelen v. City of Eudora, Kan.*, 53 F. Supp. 2d 1223, 1227 (D. Kan. 1999); *Sallaj v. Feiner*, 2024 WL 112303, at *2 (D. Kan. Jan. 10, 2024) (citing *Ogden*, 32 F.3d at 455 ("Plaintiffs are not excused from following procedural rules—including local rules—simply because they choose to proceed pro se.")).

III.    Analysis

    A. **Plaintiff's Objections (Docs. 88, 91, 93)**

4

In Plaintiff's TAC, he originally brought fifteen claims, which the court will briefly summarize. (Doc. 79.) First, Plaintiff alleged an Eighth Amendment violation based on the presence of mold throughout the B-Upper Unit at FCIL ("Count I"). (*Id*. at 19.) As for "Count II," Plaintiff alleged that there is a rodent infestation in the kitchen at FCIL. (*Id*.) In "Count III," Plaintiff alleged he was denied proper medical care, causing an emergency transport to a hospital and surgery on his stomach. (*Id*. at 19, 23.) Next, Plaintiff alleged that while at the United States Penitentiary, Pollock, Louisiana ("USP Pollock"), he was denied dental care for a chipped tooth and the prison failed to repair it ("Count IV"). (*Id*. at 25.) Next, Plaintiff alleged to have been provided an improper diet per the BOP's national nutritional guidelines ("Count V"). (*Id*. at 26.) In "Count VI," Plaintiff alleged a failure to follow proper administrative remedy procedures. (*Id*. at 26–27.) Next, Plaintiff alleged a failure to provide a clean, safe, and healthy environment at USP Pollock, and at FCIL ("Count VII"). (*Id*. at 28.) In "Count VIII," Plaintiff alleges a failure to provide showers, cleaning supplies, clean clothing, water to brush teeth, drink, or flush toilets, and no portable toilets to use. (*Id*. at 30.) As for "Count IX," Plaintiff alleged "failure to provide hygiene items." (*Id*. at 33.) In "Count X," Plaintiff's allegations are one sentence: "failure to provide clean laundry service for over 45 days to 60 days." (*Id*.) Plaintiff's "Count XI" also contains one sentence: "failure to provide legal law library most of 2023 and 2024 due to corporal type punishments with no type of modified operations in place to ensure access." (*Id*.) As for "Count XII," Plaintiff alleged a failure to provide access to recreational activities from July 2023 to July 2024. (*Id*.) Next, Plaintiff alleged that "staff" lost or threw away his property in March and April 2024 ("Count XIII"). (*Id*. at 34.) As for "Count XIV," Plaintiff alleged that he has been denied family communications and the ability to access the courts. (*Id*.) Finally, in "Count XV,"

Plaintiff alleged retaliation and harassment by FCIL employees and that he was "deni[ed] equal protection of the law and to be treated the same as similarly situated inmates." (*Id*. at 35.)

On July 28, 2025, Judge Lungstrum screened the TAC and dismissed nine of the fifteen counts. (Docs. 85.)  Specifically, Counts V, VI, IX, X, and XIII; "any retaliation claim and court access claim in Count XIV; and the equal protection, retaliation/harassment, and court access claims in Count XV" were dismissed for failure to state a claim. (*Id*. at 25.)  Further, "the medical and dental claims regarding care at USP Pollock in Counts III and IV; the claims in Counts VII, XI, and XII; and all claims in Count VIII" were dismissed as moot. (*Id*.)  And Plaintiff's claims in Count XV involving freezing his account and his request to be transferred being denied were dismissed for lack of jurisdiction.  Finally, the order dismissed all named defendants, except Warden Carter.  On August 14, 2025, Warden Carter filed a motion to clarify (Doc. 87) wherein this court clarified that Judge Lungstrum's order dismissed all defendants except the official capacity claims for injunctive relief against Warden Carter (Doc. 89).  Plaintiff subsequently filed three documents entitled "objections to courts memorandum and order"; "second set of objections to memorandum and order"; and "objection to motion for clarification…" (Docs. 88, 91, 93).

The court construes Plaintiff's objections as motions seeking reconsideration under District of Kansas Rule 7.3(b). (*See* Doc. 91 at 10–12 (seeking "reconsideration" of "all issues")).)  "A motion to reconsider must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3(b); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (stating same three grounds for a Rule 59(e) motion to reconsider).  In a motion for reconsideration, it is not appropriate to repeat arguments or advance arguments that could have been raised previously. *Servants of Paraclete*, 204 F.3d at 1012.

6

In the first motion, Plaintiff requests that his action be styled as a class action because the "issues meet the criteria," and he proceeds to largely repeat his claims involving mold, rodents, and lack of medical care. (Doc. 88 at 1–3.)  In the second motion, Plaintiff states, for the first time, that his Fourth Amendment right to be free from illegal searches and seizures was violated when prison staff confiscated his property without "provid[ing] a confiscation slip." (Doc. 91 at 1–2.) Otherwise, Plaintiff goes on to reallege many of the same facts he had previously discussed in his TAC and first motion for reconsideration.  Plaintiff also took issue that his TAC was screened without any evidence being subpoenaed from the prison. (*Id*. at 18–19.)  Overall, much of this second motion involves Judge Lungstrum's dismissal of all claims regarding Plaintiff's time at USP Pollock in Louisiana.  And in the final motion, Plaintiff objects to Warden Carter being represented by the government "at tax payer expense." (Doc. 93 at 1.)  Plaintiff also objects to dismissal of his claims seeking monetary damages and claims against Warden Carter in her individual capacity.

Here, Plaintiff makes only blanket statements that Judge Lungstrum erred in dismissing certain claims and defendants.  Rather than advancing arguments concerning a change in law or new evidence, Plaintiff realleges facts and arguments or advances facts that were known at the time of filing the TAC.  Plaintiff otherwise makes no effort to revise his argument as he merely repeats the same legal conclusions previously stated.  Accordingly, Plaintiff's motions for reconsideration (Docs. 88, 91, 93) are denied.  Plaintiff fails to advance any colorable argument that this court's prior ruling was erroneous.  As a result, the six claims that passed screening are the only claims that Plaintiff now has before the court.  For clarity, those six claims are as follows: (1) the presence of mold throughout FCIL in Count I; (2) rodent infestation of FCIL's kitchen in Count II; (3) denial of medical care at FCIL in Count III; (4) denial of dental care at FCIL in Count

IV;  (5) failure to provide hygiene items in Count VIII; and (6) denial of his ability to communicate with family and friends in Count XIV.  (*Id*. at 25–26.)

### B.  Exhaustion of Administrative Remedies

Defendant argues that Plaintiff has failed to exhaust his administrative remedies for all claims that survived screening, and his suit should therefore be dismissed.  (Doc. 111 at 24–26.)  In response, Plaintiff argues that administrative remedies were unavailable to him due to actions by prison officials, such that exhaustion is not required.  (Doc. 123 at 4.)  The court will first explain the BOP's steps for exhausting an administrative remedy—as Plaintiff does not controvert them—and will then address the parties' arguments.  *See Coleman*, 287 F. App'x at 635.

The BOP maintains a nationwide computer database of inmate complaints under the Administrative Remedy Program ("ARP") known as SENTRY.  (Doc. 111 at ¶ 4.)  That program tracks inmate complaints and appeals.  The BOP has a four-tiered ARP.  (*Id*. (citing 28 C.F.R. §§ 542.10–542.19 (regulations adopting administrative procedures)).)  The first step is informal resolution with prison staff via a BP-8 form, which is not tracked in SENTRY.  If informal resolution is unsuccessful, the second step requires the inmate to file a formal BP-9 with the Warden.  *See* 28 C.F.R. § 542.14.  An administrative remedy at this level, and subsequent levels, is assigned a remedy ID number and tracked in SENTRY.  (Doc. 111 at ¶ 4.)  The Warden has 20 calendar days to respond to the form BP-9.  (*Id*.)  If the inmate is dissatisfied with the response, he may appeal to the regional director via form BP-10 within 20 calendar days of the Warden's response, and the regional director has 30 calendar days to respond.  *See* 28 C.F.R. §§ 542.15, 542.18.  If still dissatisfied, the fourth and final step requires the inmate to appeal to the general counsel via a form BP-11 within 30 calendar days of the regional director's response, and the general counsel has 40 calendar days to respond.  (Doc. 111 at ¶ 4.)  Appeal to the general counsel

is the final administrative appeal.  *See* 28 C.F.R. § 542.15(a).  An inmate has not exhausted his administrative remedies until he has properly and timely sought review at all formal levels.  (Doc. 111 at ¶ 5.)  One exception exists for sensitive issues, whereby an inmate who believes his safety would be endangered may submit a request directly to the regional director, marked "Sensitive."  (*Id*. at ¶ 6.)  Plaintiff never utilized this exception.

The BOP may reject a grievance at any level for failing to meet submission requirements.  *See* 28 C.F.R. § 542.14(c) (detailing submission requirements for the BP-9); 28 C.F.R. § 542.15(b) (detailing submission requirements for the BP-10 and BP-11).  If rejected, the inmate receives written notice and, if the defect is correctable, a reasonable extension of time to cure and resubmit.  *See* 28 C.F.R. § 542.17.  Since July 1990, the BOP has maintained records of administrative remedy complaints in the SENTRY database, which allows computerized searching of complaints and appeals filed by a specific inmate.  (Doc. 111 at ¶ 8.)  Each formal complaint receives a unique remedy ID number with an extender identifying the level of review.  (*Id*. at ¶ 9.)  For example, "F-1" is the extender on the remedy ID number for the institution level, "R-1" for the regional level, and "A-1" for the national level.  (*Id*.)

A review of Plaintiff's SENTRY data shows that he has submitted 63 administrative remedy requests during his BOP incarceration, 36 of which were filed since January 31, 2024.  (*Id*. at ¶ 10; *see* Doc. 111-2 at 9–58.)  Of those 36, nine were filed at the institution level and related to the issues in this case—namely, mold, rodents, medical care, dental care, hygiene products, and blocked phone numbers.  They are as follows:

1. Remedy ID 1212093-Fl - Medical Neglect from 2022
2. Remedy ID 1212095-Fl - Dental Care
3. Remedy ID 1212113-Fl - Hazardous Conditions; Black mold
4. Remedy ID 1212117-Fl - Denied Hygiene Items
5. Remedy ID 1212120-Fl - Mold in Kitchen; Rodents
6. Remedy ID 1212134-Fl - Improper Medical Care

7.   Remedy ID 1212138-Fl - Denied Communications with Family
8.   Remedy ID 1221043-Fl - Showers; Hygiene; Mod. Lockdown
9.   Remedy ID 1221054-Fl - Hygiene Products During Mod. Operations

(Doc. 111 at ¶ 11.)  Seven of the above nine remedies were rejected because Plaintiff failed to attempt informal resolution, filed untimely, included too many issues in one request, or were filed at the wrong level.  (*Id*. at ¶ 12; *see* Doc. 111-2 at 42–45, 47–48, 60–94.)  Plaintiff failed to cure these submission requirements and therefore did not appeal any of the rejections.

The remaining two—remedy ID numbers 1221043-F1 and 1221054-F1—were timely filed, informal resolution was properly attempted prior to submitting, and they otherwise complied with the submission requirements for form BP-9.  (Doc. 111 at ¶ 13; *see* Doc. 111-2 at 97, 105.)  Accordingly, Plaintiff received responses to both in January 2025.  However, Plaintiff only appealed remedy ID 1221043-F1 to the regional level (filing form BP-10), where he received a response in February 2025, but did not appeal through the final step to the general counsel level.  (Doc. 111-2 at 114.)  Notably, Defendants cite evidence showing that Plaintiff has demonstrated the ability to fully exhaust remedies to the general counsel level, having previously done so on five occasions, (*id*. at 30, 34, 37–38, 57), including as recently as February 7, 2025.  (Doc. 111 ¶ 15.)  Nevertheless, Plaintiff has failed to do so with respect to the allegations underlying the instant action.  (*Id*. at ¶¶ 15–16.)

The PLRA governs prisoner lawsuits in federal court.  *Perttu v. Richards*, 605 U.S. 460, 464 (2025).  The PLRA requires prisoners to exhaust available administrative grievance processes before filing a federal lawsuit.  *Id*.; *see* 42 U.S.C. § 1997e(a).  "A prison's procedural requirements define the steps necessary for exhaustion[;] an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure."  *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)); 42 U.S.C. § 1997e(a)

10

(providing that a prisoner cannot bring an action "with respect to prison conditions" under any federal law "until such administrative remedies as are available are exhausted."). As explained above, the BOP has a four-step procedure for administratively exhausting claims. Plaintiff does not argue that he exhausted his remedies. The court thus finds that Plaintiff has failed to exhaust his claims. The only remaining question is whether those remedies were available, and Plaintiff argues they were not. (Doc. 123.)

Once Defendant carries the burden of showing that the inmate has failed to exhaust his administrative remedies "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (alteration in original) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). The Supreme Court has outlined three circumstances when an administrative remedy is "unavailable." *Ross v. Blake*, 578 U.S. 632, 635–36 (2016); *see also Moore v. Tresch*, No. 20-1334, 2022 WL 612796, at *2 (10th Cir. Mar. 2, 2022). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. Indeed, "courts [ ] are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

11

Plaintiff appears to argue that administrative remedies were unavailable to him under the third circumstance, claiming that "[FCIL] continuously did 'thwart' our administrative remedies." (Doc. 123 at 13.)   To prove remedies were unavailable to him under the third circumstance, Plaintiff "must produce specific facts that show there is a genuine issue of fact as to whether (1) 'the threat[, machination,] or intimidation actually did deter [him] from lodging a grievance' and (2) 'the threat[, machination,] or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance.'"  *May*, 929 F.3d at 1235 (quoting *Tuckel*, 660 F.3d at 1254 (noting a subjective prong—that the inmate was actually thwarted—and objective prong—that a reasonable inmate would have been thwarted)).  The court finds that Plaintiff has not raised a genuine issue of fact as to either prong.

Plaintiff argues that administrative remedies were unavailable to him due to actions by prison officials, pointing to a litany of purported obstructions.  (Doc. 123 at 4.)  He contends that FCIL staff "refused to accept or provide administrative remedies," that he attempted to file remedies on all issues "but they were brought back to [him] refused," and that remedies were "never available" to him because of "numerous circumstances." (*Id*. at 5, 9, 12.)  He further alleges that "continuous lockdowns" due to inmate injuries thwarted his exhaustion efforts—a fact he claims security footage would confirm—and that the "records clearly show that no administrative remedies were ever available at the time of filing [this] civil action." (*Id*. at 13.)  Even liberally construed, none of these statements—viewed individually or collectively—are sufficient to establish a genuine issue of material fact as to either prong of the unavailability inquiry.

As to the subjective prong, Plaintiff's own submissions belie his claims.  The record reflects that Plaintiff submitted 36 administrative remedy requests after January 31, 2024, nine of which directly concerned the issues raised in this lawsuit.  (Doc. 111 at ¶ 11.)  The Tenth Circuit

has held that a plaintiff cannot claim he was thwarted from the grievance process when the record demonstrates that he in fact used it. *See Kee v. Raemisch*, 793 F. App'x 726, 736 (10th Cir. 2019) (finding "the sheer number of his grievances" defeated the plaintiff's claim that he was thwarted from lodging a grievance); *Calbart v. Sauer*, 504 F. App'x 778, 784 (10th Cir. 2012) (unpublished) (rejecting the plaintiff's claim that defendants interfered with his ability to access grievance forms where "the numerous grievance forms in the record" contradicted that assertion). The same is true here.

The sheer volume of grievances Plaintiff submitted undermines his claim that prison staff refused to provide or accept them. Plaintiff's assertion that remedies were "brought back to me refused" is conclusory; it identifies no specific instance, no officer, and no circumstance in which a remedy was wrongfully rejected. And the only specific date provided is from "January 2024 to . . . April 2024." (Doc. 123 at 5.) This falls short of the "specific facts" required to survive summary judgment. *See Kilman v. Brown*, No. 21-1104, 2021 WL 4057687, at *3–4 (10th Cir. Sept. 7, 2021) (holding the plaintiff failed to carry his burden when his only evidence consisted of conclusory allegations that "officers denied multiple grievances multiple times" and that he was "obstructed from the grievance process"); *May*, 929 F.3d at 1235 (explaining the inmate's conclusory statements regarding how he was prevented from filing a due process grievance while he simultaneously managed to file 29 others during the same period to be particularly damaging to his claim of unavailability). Further, the court finds it noteworthy that Plaintiff has exhausted five administrative remedies regarding other matters. (Doc. 111-2 at 30, 34, 37–38, 57.) One was exhausted as recently as February 2025. (*Id*. at 57.) This evidence shows that the administrative process was available to Plaintiff, contrary to his allegations.

Moreover, it is unclear from Plaintiff's allegations whether the grievances that were "brought back to [him] refused," were the same ones rejected for failing to comply with the ARP's submission requirements as required by 28 C.F.R. §§ 542.14(c), 542.15(b). (Doc. 111 at ¶¶ 11–12; *see* Doc. 111-2 at 42–45, 47–48, 60–94.)  In any event, Plaintiff's allegation that remedies were "never available" due to "numerous circumstances" is indistinguishable from the vague, unsupported arguments rejected in *Kilman*.  (Docs. 123 at 12.)  *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990) ("A nonmoving party may not successfully oppose a summary judgment motion by simply replacing 'conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.'").

To the extent Plaintiff argues that he did not have time to respond or was unable because the prison was in a lockdown, such arguments are unpersuasive.  Specifically, the time limits associated with responding and appealing decisions within the BOP's four-step process may be extended when an inmate so requests.  *See* 28 C.F.R. § 542.15.  Plaintiff makes no mention of having ever made such a request.  Ultimately, Plaintiff's verified pleadings are devoid of the specificity required to create a triable issue.  Plaintiff provides no evidence showing that FCIL authorities improperly prevented him from exhausting his administrative remedies.  His sweeping and unspecific assertions are precisely the type of conclusory allegations the Tenth Circuit has held insufficient to defeat summary judgment on exhaustion grounds.

As to the objective prong, Plaintiff's evidence fares no better.  Plaintiff has not identified any threat, act of intimidation, or specific obstruction, beyond conclusory allegations, that would deter a reasonable inmate.  *See Kilman*, 2021 WL 4057687 at *3–4 (stating where plaintiff failed to "make the [objective prong] argument" that such "omission is enough to affirm" dismissal on

14

failure to exhaust grounds).  This is particularly true given the record evidence that Plaintiff continued to file grievances throughout the relevant period.

In summary, Plaintiff has failed to carry his burden showing that exhaustion of the BOP's administrative remedy process was unavailable.  Instead of controverting Defendant's statements of fact, Plaintiff effectively restates the allegations found in the TAC.  Although Plaintiff has filed many grievances, he has failed to exhaust them with respect to the issues in this case.  Thus, because Plaintiff has failed to exhaust his claims, they are dismissed.  *See Greer v. Dowling*, 947 F.3d 1297, 1301 (10th Cir. 2020) ("A prisoner can sue over prison conditions only after exhausting administrative proceedings."); *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004) (holding the exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it.").

## IV.    Conclusion

THEREFORE, Plaintiff's motions for reconsideration (Docs. 88, 91, 93) are DENIED; Defendant's motion for summary judgment (Doc. 111) is GRANTED; and Plaintiff's pending motions (Docs. 95, 96, 106, 129, 137, 138, 139, 140) are DENIED AS MOOT.  Accordingly, the clerk is directed to enter a judgment of dismissal in favor of Defendant, as to all of Plaintiff's claims.

IT IS SO ORDERED.  Dated this 27th day of April, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE